## LAKE STEAM SHIPPING CO. v. BACON.

(District Court, S. D. New York. May 4, 1905.)

SHIPPING—CHARTER HIRE—DISABLEMENT OF VESSEL BY STRANDING.

Where a steamship under a time charter was disabled by stranding so that during the remainder of the voyage she was not in the condition required by the charter, the charter hire nevertheless runs after she reached port and while discharging, when the disablement did not affect her efficiency to discharge, although there was delay, owing to damage to the cargo resulting from the stranding.

[Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Shipping, §§ 219–221.]

In Admiralty. On exceptions to commissioner's report. For prior opinion, see 129 Fed. 819.

Convers & Kirlin, for libellant.

Wheeler, Cortis & Haight, for respondent.

ADAMS, District Judge. This action was brought to recover hire of the steamship Avonmore from April 16, 1903, to May 13, 1903. It was held—(D. C.) 129 Fed. 819—that under the terms of the charter party, there could be no recovery of hire, while the vessel was in an unfit state to perform the service for which she was engaged, owing to her condition arising from a stranding on Anegada Reef, Virgin Islands, but the time occupied in discharging in New York should be paid for and the matter was sent to a commissioner to assess the damages in such respect. Testimony was then taken tending to show that the vessel was employed in discharging 7 days and 1½ hours, for which the commissioner found the libellant was entitled to recover $628.70, with interest.

The respondent excepts to such allowance upon the ground that the vessel was not in an efficient state for such service because the discharge was very much delayed, owing to the damaged condition of the cargo. The commissioner says in this connection:

"On testimony of which the above is the substance, respondent argues that the ship was not 'again in an efficient state to resume her service,' so far as the discharge was concerned, since owing to the condition of the cargo it could not be discharged with the usual despatch. While I think the decision of the court disposes of this question adversely to respondent, it also seems to me that the delay in discharging described by respondent's witnesses was due not to the condition of the ship, but to the condition of the cargo. Had the ship been fully repaired at St. Thomas and restored to her original condition so as to be 'ready to receive cargo, and tight, staunch, strong and in every way fitted for the service,' or had the cargo been transshipped into another vessel, there would have been the same necessity for separating the damaged cargo from the sound after landing it on the dock at New York, the only difference being that the time thus consumed would probably have been somewhat less because there would have been no additional damage on the voyage to New York. The bulk of the damage was sustained before the ship started from St. Thomas for New York. As far as the evidence shows, the fact that the cargo was damaged did not in any way delay or embarrass the actual discharge from the ship to the dock, nor does it appear that any machinery or apparatus belonging to the ship and used in the discharge was ineffective, or that its efficiency had been in any way impaired. There is nothing to show that the cargo which remained in the ship could not have been landed with the same despatch as before the accident.

"Under the Harter Act and the decision of the court, the owners of the cargo could have no claim against the ship or her owners for damage to the cargo through the stranding; nor has the respondent any such claim, or any claim for lost freight, since if there might otherwise have been any doubt on that subject, it is covered by clause 27 of the charter, which provides: 'It is also mutually agreed that this Charter is subject to all the terms and provisions of and all the exemptions from liability contained in the Act of Congress of the United States, approved on the 13th day of February, 1893, and entitled "An Act relating to Navigation of vessels," etc.' Act Feb. 13, 1893, c. 105, 27 Stat. 445 [U. S. Comp. St. 1901, p. 2946]. The libellant, therefore, is not responsible for the delay resulting from the separation of the bags on the dock, and no allowance in time should be made therefor to respondent."

It does not seem necessary to add much to what the commissioner has said, as it apparently disposes of the question now presented. It seems true that the delay was partly due to the stranding in that it put the sugar in such a condition that it could not be expeditiously handled after being landed on the wharf and in such sense the delay was partially attributable to the stranding, which, it has been held, relieved the respondent of the obligation to pay hire during the voyage, but such relief did not go to the extent of releasing the respondent from the payment of hire while the discharge was taking place, unless the ship's condition was such as to prevent its being accomplished with due celerity. It was the condition of the cargo and not of the ship that caused the delay in question and it seems that when the cargo reached New York, the hire was set running again and should be paid for for such time as was necessarily occupied in the discharge, even though some of the loss of time was due to the condition of the cargo arising out of the original misfortune. The question whether full hire should be paid under the circumstances, seems to be answered in the affirmative by the fact that the ship was necessarily occupied during the time allowed for. She was in a condition for such service. The cargo, however, was not in a condition to be rapidly taken away from her as it was discharged. The commissioner says, with apparent correctness, that there could be no maintainable claim against the ship for damage to the cargo through the stranding and such being the case, it is not important here that some delay was incident to such damage. This matter can not be disposed of on general equitable principles but must be considered in connection with the contract of hiring, which provided how and when the hire should run.

Exception overruled. Report confirmed.