FIELD et al. v. HAFNIA S. S. CO.

(District Court, E. D. Pennsylvania. September 12, 1916.)

On motion for reargument. Denied.
For former opinion, see 234 Fed. 187.

Howard M. Long, of Philadelphia, Pa., for libelant.
H. Alan Dawson, of Philadelphia, Pa., and Burlingham, Montgomery & Beecher, of New York City, for respondents.

DICKINSON, District Judge. The motion is confined to the one feature of the claim for hire as affected by the suspending provision of the charter party. The cross-libelant has successfully maintained that the fire casualty which befell the vessel suspended all its obligations under the charter party. It has been found in favor of the claimant that the suspension of the obligations of the contract continued throughout the life of the charter party. It was further found that the claim made for hire was not justified. We have been asked to review this latter ruling, and, in doing so, to make a fuller statement of the findings of fact, and incidentally make a correction in the statement of dates.

The vessel arrived in the outer harbor of the port of Buenos Ayres on October 6, 1911. The captain went ashore to arrange for the discharge of the cargo. To effect this the vessel was required to be moved up into the inner harbor. Had no fire occurred, the discharging, so far as could be anticipated, would have been begun on October 9th, and would have been completed about November 9th. The fire occurred on the morning of October 8th. The vessel was filled to subdue the fire. She was not raised until October 15th. The port authorities would not permit the damaged vessel to discharge at the wharf first designated. The wharf required under the customs regula-

tions was not and could not be secured until October 27th. The discharging proceeded without delay, but was not completed until December 4th. The vessel was then surveyed and taken in charge by her owners. She sailed on December 16th for the port at which she was afterwards repaired. Her owners refused to return her to the charterers, because the term of her hiring had ended by the time she was in condition to be restored to service. The charterers paid the hire up to the then next time of payment, after deducting 18 days. They inadvertently stated the deduction as made from October 6th, instead of from October 8th, the true date of the fire. If, however, the sum deducted was not excessive, the misstatement of the date of the fire is not important. The cross-libelant apparently does not dispute the correctness of the deduction affecting the time measured by the dates of October 8th and October 15th. The controversy is over the deduction made in excess of $1,623.23, or $2,029.04.

The claim is based upon the propositions of law that the question involved is whether the vessel was in a state of efficiency for the service required of her, and the further proposition that such service was the discharge of her cargo, and the proposition of fact that she was in a condition to perform and did in fact perform this service. The claimants are at the outstart confronted with this at least seeming dilemma. The obligations of each of the parties alike grow out of the charter party. These obligations, if not strictly reciprocal and interdependent, respectively each support and is in consideration of the other. The owners were bound to give the charterers the use of the vessel and to maintain her in a state of efficiency. The charterers were bound to pay the hire. It is unthinkable that either could, without performing, demand performance. The owners have successfully asserted the suspension of their obligation to give the charterers the use of the vessel. How, then, can they in the same breath demand the hire?

The claimants seek to escape the consequences of the answer which the form of the question suggests by the limitation of the demand to the time during which the charterers did have the use of the vessel in unloading. This enables them to retort with the question in a different form. The charterers had the control and use of the vessel; why should they not pay the hire? The point of the conflict between the parties thus clearly has its bearings upon the fact of use. The charterers aver loss of the use of the vessel for which they had agreed to pay the hire. The owners retort with the averment of some, although a limited, service. The obligation of payment, it is true, is contractual, and is not based upon a quantum meruit; but the fact of efficiency is a fact of substance, and is present, if real, and need not be formally complete. Fitness is a relative term. When, therefore, all that is called for is fitness to meet harbor uses, fitness for an extended voyage cannot be demanded. This is the principle underlying the rulings (so far as this feature was involved) in the cases of Hogarth v. Muller, App. Cas. 48, Lake Co. v. Bacon (D. C.) 129 Fed. 819, and 137 Fed. 961, and 145 Fed. 1022, 74 C. C. A. 476, and the case of Clyde Co. v. West India Co., 169 Fed. 275, 94 C. C. A. 551.

The question, as already observed, is one of contract. The obligation sought to be enforced, or relief from it, must be sought in the charter party. In the instant case, there are two pertinent provisions. One suspends the obligations of the contract in the event of fire. The other is that "damage preventing the working of the vessel" relieves the charterers from the obligation to pay hire "until she be again in an efficient state to resume her service." Under the first provision there was constructively no contract. This condition related back to the time of the fire, and as it continued up to the expiration of the term of hiring, the contract constructively ended on October 8th. Under the second provision, no hire was payable, owing to the damaged condition of the vessel, until she was restored to a state of efficiency. As she was not restored within the life of this contract, she was never restored, and the obligation to pay hire was at an end. This leaves the question of when it ended, and the answer turns upon what is meant by fitness.

We think the fair meaning of the contract to be this: The expectation, of course, was that the vessel would earn for its charterers the amount of her hire. The forced idleness of the ship and consequent loss of earning power might result from damage to the ship; inefficient equipment; unskillful handling; damage to the cargo or stress of weather. The dividing line for apportioning the loss is clearly indicated. If the loss was due to damage to the cargo, the charterers must bear it; if to the ship, the owners. This might, under a different state of facts, require the drawing of rather fine lines. Under the facts of this case we find there "was a loss of time" of not less than 19 days "from damage preventing the working of the vessel," and that in consequence "the payment of hire ceased" for that length of time.

We are further of opinion that the owners can justify withdrawing the vessel from the charterers on the ground that the fire ended their obligation to continue her in service only at the cost of foregoing any demand for hire. The suggestion of the equity of a demand for hire as compensation for the use made of the vessel in unloading is met by the thought that the charterers agreed to pay the stipulated hire, not for partial, but complete, service, and that the agreement was that hire should cease as long as the vessel was incapable of service. Certainly while she, as a consequence of the fire, was lying at the bottom of the harbor, she was not in an efficient state of service, and the duration of inefficiency was, as we have found, at least 19 days.

We therefore adhere to the conclusion before reached, and because of this the reargument is refused.

A decree embodying the findings made may be submitted.